IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RONALD BUCK                                                                                    PLAINTIFF

vs.                                       Civil No. 4:09-cv-04072

FEDERAL EMERGENCY
MANAGEMENT AGENCY et al.                                                          DEFENDANTS

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before this Court is Defendant FEMA's Motion to Dismiss Second Amended Complaint. ECF No. 23. Plaintiff responded to this Motion on May 11, 2010. ECF No. 34. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Harry F. Barnes referred this Motion to this Court for the purpose of making a report and recommendation. ECF No. 45. In accordance with that referral, this Court enters the following report and recommendation.

**1. Background**

On July 13, 2009, Plaintiff filed his Original Complaint in this case. ECF No. 1. Thereafter, Plaintiff filed his First and Second Amended Complaints. ECF Nos. 6, 19. Plaintiff's Second Amended Complaint is currently before this Court. ECF No. 19. In his Second Amended Complaint, Plaintiff raised the following causes of action: a violation of the Federal Torts Claims Act, nuisance, inverse condemnation, trespass, and negligence. *Id.* Plaintiff alleges FEMA is liable for "grading a substantial portion of the Airport Property [north of Plaintiff's property] by adding SB-2 crushed rock and Geotech fabric." *Id.* at 4. As a result of this grading, Plaintiff claims "large quantities of surface water from rain, which formerly lay upon the property until they evaporated or percolated into the soil, are now collected and channeled down" through Plaintiff's property. *Id.* at 4. Plaintiff claims that,

as a result of this drainage problem, he has "suffered damages to his real property and chicken broiler operation." *Id.* at 10.

On April 13, 2010, FEMA filed the present Motion to Dismiss. ECF No. 23. In this Motion, FEMA alleges Plaintiff's case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Id.* at 1. FEMA claims that the "United States is immune from suit unless immunity is specifically waived" and that FEMA has not waived immunity for the actions of its independent contractor, Clearbrook, L.L.C. ("Clearbrook").[1] *Id.* at 1-2. Further, FEMA argues that even if it were liable for the actions of Clearbrook, it would still be immune from suit because the planning of this project was discretionary as a part of the disaster relief act, and suit is barred under the Stafford Act. *Id.* Finally, FEMA argues that even if it were not immune from suit under both of these provisions, this Court "should still find in favor of the Defendants because Plaintiff has not shown that FEMA's actions were the proximate cause of his injury." *Id.*

In addition to its Motion to Dismiss, FEMA also filed a Supplement to this Motion. ECF No. 47. In this Supplement, FEMA argues that this case should also be dismissed because Plaintiff has obtained a default judgment against Clearbrook. *Id.* FEMA claims since Plaintiff has obtained a default judgment against Clearbrook, he has elected his remedies and is not entitled to further damages. *Id.* at 1-4. Specifically, FEMA states, "Plaintiff's election to proceed against Clearbrook to recover its damages by way of judgment prevents it from proceeding against the United States." *Id.* at 3.

On May 11, 2010, Plaintiff filed its response to FEMA's Motion to Dismiss. ECF No. 34. In his response, Plaintiff argues that Clearbrook was not an independent contractor, and, therefore, FEMA

---

[1] FEMA claims Clearbrook was the independent contract in charge of the "day-to-day" operations in grading this property and preparing the pad for the mobile homes at issue in this case.

is liable for Clearbrook's actions. *Id.* at 12-14. Plaintiff argues that FEMA's actions or omissions do not fall under the "discretionary function" exception because FEMA's decision to use Geotech fabric and SB-2 crushed rock was an "operational" decision which does not fall under this exception. *Id.* at 10-12. Plaintiff also argues that FEMA's allegations concerning proximate causation are premature and should be ignored at this early stage of this litigation. *Id.* at 7-10. Finally, Plaintiff argues that this Court should retain jurisdiction over his inverse condemnation claim because his claims "sound in tort" and are not subject to the standards of the Little Tucker Act.[2] *Id.* at 14-16.

## 2. <u>Applicable Law</u>

Pursuant to Federal Rule of Civil Procedure 12(h)(3), a federal court must dismiss a lawsuit where it has no subject matter jurisdiction. A federal court has the responsibility to ensure it has subject matter jurisdiction. *See State of Mo. ex rel. Mo. Highway and Transp. Com'n v. Cuffley,* 112 F.3d 1332, 1334 (8th Cir. 1997) (holding that "subject-matter jurisdiction cannot be waived, and it is our duty to raise the issue *sua sponte*"). However, dismissal for lack of subject matter jurisdiction should be granted sparingly and cautiously. *See Bowe v. Northwest Airlines, Inc.,* 974 F.2d 101, 103 (8th Cir. 1992).

Further, the plaintiff has the burden of proof to establish subject matter jurisdiction. *See e.g., Hoekel v. Plumbing Planning Corp.,* 20 F.3d 839, 840 (8th Cir. 1994) (holding "[t]he burden of proving subject matter jurisdiction rests on Hoekel [Plaintiff]"). While the plaintiff bears the burden of proof, the complaint's factual allegations are taken as true when considering an attack on subject matter jurisdiction. *See Bowe,* 974 F.2d at 103.

In considering a claim to dismiss for lack of subject matter jurisdiction, the Court may consider

---

[2] Importantly, the Little Tucker Act may otherwise require this case be transferred to the Court of Federal Claims. *See* 28 U.S.C. § 1491.

matters outside the pleadings without converting the motion into a motion for summary judgment. *See Drevlow v. Lutheran Church, Mo. Synod,* 991 F.2d 468, 470 (8th Cir. 1993). As the Eighth Circuit has held, "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weight the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States,* 918 F.2d 724, 730 (8th Cir. 1990).

**3. Discussion**

FEMA raises the following five arguments in its Motion to Dismiss and Supplemental Brief: (A) contractor immunity; (B) Stafford Act immunity; (C) proximate causation; (D) bar from Clearbrook's default judgment; and (E) inverse condemnation. ECF Nos. 23, 47. This Court will address each of these five arguments.

    **A.**    **Contractor Immunity**

Pursuant to 28 U.S.C. § 2671, the Federal Tort Claims Act permits suits in limited circumstances against the United States for acts or omissions of a "federal agency" but does not permit suits against the United States for act or omissions by "any contractor with the United States." Thus, liability of the United States cannot be premised upon the negligent acts or omissions of its independent contractors. *See United States v. Orleans,* 425 U.S. 807, 814 (1976); *Logue v. United States,* 412 U.S. 521, 526 (1973).

In order to "determine whether an individual is an employee or contractor, the court must evaluate the extent to which the government has the power to supervise the individual's day-to-day operations." *Knudsen v. United States,* 254 F.3d 747, 750 (8th Cir. 2001). As the Eighth Circuit has stated, the "crucial question is the amount of control exercised by the government over the physical

4

performance of the individual." *Id.* Necessarily, such a determination of control is an intensely factual inquiry and should generally not be decided at as a part of a motion to dismiss. *See Bernie v. United States,* 712 F.2d 1271 (1983) (appeal of "independent contractor" status after summary judgment and the opportunity to develop the facts in the case); *Knudsen v. United States,* 254 F.3d 747 (2001) (same); *Kirchmann v. United States,* 8 F.3d 1273 (1993) (appeal of "independent contractor" status after a "trial to the court on a stipulated record with respect to the question of jurisdiction").

In the present action, there has been no formal discovery. The only piece of evidence before this Court establishing the level of control between FEMA and Clearbrook is the contract between FEMA and Clearbrook to grade the Airport Property. ECF No. 13-1. In this contract, Clearbrook is designated as a "contractor." However, despite this designation, this contract reflects that the Government retained a large amount of control over Clearbrook's operations. After an initial review, this Court finds the Government retained control over Clearbrook's quality control system. The Government retained the right "to inspect or verify" Clearbrook's quality control system "at any time." *Id.* at 19.

The Government required Clearbrook "to identify the individual responsible for the day to day work and operations of the project." ECF No. 13-1, Page 19. Whether the Government then used the identity of that person to direct the daily operations of construction is unclear from the contract alone. Clearkbrook was also required to meet with the Government prior to construction to "develop mutual understanding relative to quality control operations, inspections, and the interrelationship of Contractor and Government inspection." *Id.* Such an "interrelationship" indicates, at a minimum, the Government retained some level of control over Clearbrook's activities.

The Government also required: (1) Clearbrook to submit "daily construction quality control"

reports; (2) Clearbrook to submit progress schedules with starting and completion dates "of all such work features"; and (3) Clearbrook to use "Geo-tech – Fiber under-lament; synthetic material; a minimum of 4" of crush and run material to be specified at SB-2 or equal" as the material used to grade the Airport Property. ECF No. 13-1, Pages 20, 23, 53.

Taken together, these provisions of FEMA's contract with Clearbrook indicate FEMA may have maintained a great deal of control over the day-to-day operations of this project. These provisions also indicate that Clearbrook may have functioned more as an employee of FEMA than an independent contractor. Further discovery is needed to ascertain the level of control FEMA maintained. Indeed, while this Court makes no definitive finding on the issue of whether Clearbrook was an employee or an independent contractor, the Court finds that dismissal of Plaintiff's Complaint based upon FEMA's mere allegation that Clearbrook was an independent contractor is premature.

**B.      Stafford Act Immunity**

FEMA claims it is not liable for the gravel work and the alleged injury caused thereby because its function in planning this pad was "discretionary." ECF No. 24, Pages 8-10. FEMA claims a federal agency is immune from suit for such "discretionary functions" performed when providing disaster assistance. *Id.* In response, Plaintiff argues that Clearbrook's actions fall outside this exception for two reasons. ECF No. 34, Pages 10-12. First, Plaintiff claims that FEMA and Clearbrook appeared to have "off the record" oral agreements that may have caused their decisions to no longer be "discretionary." *Id.* Second, Plaintiff claims that once FEMA issued its Scope of Work ("SOW") requesting bids on this project, any decisions thereafter were not "discretionary." *Id.*

Pursuant to the Stafford Act, the Federal Government is not liable "for any claim based on the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the

part of a Federal agency or an employee of the Federal government in carrying out the provisions of this [Disaster Relief] Act." 42 U.S.C. § 5148 (2008). Essentially, this provision provides that the United States is shielded from liability for discretionary acts performed in carrying out disaster assistance operations. *See id.* In the present action, there appears to be no dispute that FEMA was providing disaster assistance to the victims of Hurricane Katrina in preparing this pad. Accordingly, because FEMA was providing disaster relief, this provision applies to the instant case.

The only remaining question is whether FEMA's actions in this case would fall under the "discretionary function" exception. Although it does not appear the Eighth Circuit has specifically addressed this exception, it has addressed a similar exception under the Federal Tort Claims Act ("FTCA"). *See, e.g., In re Gleason v. United States ex rel. Dep't of the Army Corps of Engineers,* 857 F.2d 1208 (8th Cir. 1988); *E. Ritter & Comp. v. Dep't of the Army Corps of Engineers,* 874 F.2d 1236 (8th Cir. 1989). Because of the similar language of this exception in both the FTCA and the Stafford Act, many courts have interpreted these provisions together. *See In re FEMA Trailer Formaldehyde Prod. Liability Litigation,* 583 F. Supp. 2d 758, 767 (E.D. La. Oct. 3, 2008) (holding that "this Court's analysis of the discretionary function exception is the same under both the Stafford Act and the FTCA"); *United Power Ass'n v. Fed. Emergency Mgmt. Agency,* No. A2-99-180, 2000 WL 33339635, at *2 (D.N.D. September 13, 2000) (holding that the "parties have referred to and the Court has found only a handful of cases discussing the discretionary function exception under the Stafford Act. . . . [t]hese cases have consistently used the 'discretionary function' exception analysis as set out by the Supreme Court for the Federal Tort Claims Act").

The "discretionary function" exception is not "rigidly defined." *See In re Gleason,* 857 F.2d at 1209. This exception "includes more than the initiation of programs and activities" and "includes

determinations made by 'administrators in establishing plans, specifications or schedules of operations.'" *Id.* More specifically, "planning level" decisions are covered by the discretionary function exception while "operational level" decisions are not. *See E. Ritter & Comp.,* 874 F.2d at 1240-41. "The planning level consists of decisions involving questions of policy, that is, the evaluation of the financial, political, economic and social effects of a plan. On the other hand, the operational level involves decisions relating to the normal day-to-day operations of the government." *Id.* (internal citation and quotation marks omitted).

For example, in *E. Ritter & Company,* the plaintiff sought reimbursement for permanent damage to his land caused by erosion. 874 F.2d at 1237. The plaintiff claimed this injury resulted from a flood control ditch which was constructed and maintained by the defendant, the Army Corps of Engineers. *Id.* The plaintiff was awarded damages at the trial court level, and the defendant appealed. *Id.* The Eighth Circuit affirmed the decision of the lower court and held that while the "discretionary function" exception applied to defendant's *construction* of this flood control ditch, that exception did not apply to defendant's *maintenance* of that ditch. *Id.* "The district court recognized that the Corps' responsibilities, however, did not end after construction of the ROD [ditch] was complete. Even though the Corps of Engineers knew that this construction of the ROD would cause erosion of adjoining land, the Corps failed to maintain the banks of the ROD in proper fashion." *Id.* at 1241.

Similarly, in *Murdock v. Employers Insurance of Wausau,* 917 F.2d 1065 (8th Cir. 1990), an employee of a government contractor was injured when a section of a canal he was excavating fell on him. The employee sued the United States, asserting that "the United States–on notice that a hazardous situation existed–was negligent in failing to take adequate precautions to ensure a safe place

to work." *Id.* at 1066. The United States asserted that suit was barred by the "discretionary function" exception under the FTCA. *Id.* The Eighth Circuit disagreed and affirmed: "the government's initial decision to set forth certain policies was within the discretionary function exception but that the government's failure to comply with its own policies fell outside its scope." *Id.* at 1073.

Based upon the holdings in these cases, this Court finds that FEMA's conduct falls outside the scope of the discretionary function exception. Much like the analysis in *E. Ritter & Company,* FEMA's decision to build this pad and the specifications of the pad fall within the discretionary function exception. Specifically, in soliciting bids to perform this project, FEMA issued the SOW that included the following specifications:

Background:

The end result of the crush and run project is to allow the staging and storage of mobile homes as well as the accessibility of the power units needed to move them in all types of weather. FEMA equipment to be used at staging yard. Forklifts, Semi Trucks, Farm Tractors. M.H. [Mobile Homes] will not be moved or travel after dark. Definition of storage operations:

Items to be included in the bid price(s):

1. Ability to stand up (crush & run) to the daily access of heavy equipment.

2. Determination of the necessary construction processes and the amount of materials needed to achieve the necessary results; Included but not limited to: possible excavation; complete site assessment and development.

3. Facility shall withstand daily operation of a stating and storage operations for a period of not less than the two year firm lease. See background for explanation and storage operations.

4. Access road in must be maintained during construction. The contractor shall return the access road to original condition prior to project completion.

5. Contractor shall complete a minimum of 5 acres per day. (30 M.H. per one acre; need to move 150 M.H. per day)

9

    6. Must address drainage issues

    7. Geo-tech – Fiber under-lament; synthetic material; a minimum of 4" of crush and run material to be specified at SB-2 or equal

    Option: additional 120 acres

    Point of Contact: Contracting Officer's Technical Representative/COTR - TBA Upon Award.

ECF No. 13-1, Page 53. Because these specifications were formulated at the planning level, they must necessarily be covered by the discretionary function exception.

    However, FEMA's failure to ensure proper drainage during and after construction does not fall under the discretionary function exception. While the SOW required that "drainage issues" be addressed in the bid, there is no indication that Clearbrook's bid included any "planning level" decision to address drainage issues. Without any such "planning level" decision, the method of planning the drainage system occurred during the day-to-day operations and was not included under this exception. *See E. Ritter & Comp.,* 874 F.2d at 1240-41 (holding "the operational level involves decisions relating to the normal day-to-day operations of the government"). Further, even if Clearbrook and FEMA entered into such an agreement that detailed the drainage requirements, FEMA's "failure to ensure that the procedure was followed is outside the scope of the exception." *Murdock,* 917 F.2d at 1073. Based upon the allegations in Plaintiff's Second Amended Complaint, the drainage system was flawed and resulted in injury to Plaintiff's property. Because it appears FEMA did not monitor Clearbrook to ensure the drainage system was proper, FEMA's conduct was not discretionary. *See Murdock,* 917 F.2d at 1073.

    Additionally, even *after* construction, FEMA had a responsibility to ensure proper drainage from the Airport Property. In *E. Ritter & Company,* the United States was liable for its failure to avoid

erosion after the flood control ditch had been built. 874 F.2d at 1237. The facts in *E. Ritter & Company* are very similar to the facts in this case. As in that case, FEMA cannot avoid liability for allowing "substantial flooding and deterioration of the soil composition" because it failed to ensure proper drainage. ECF No. 19 ¶ 15. Thus, at this time, this Court denies FEMA's attempt to avoid liability under the discretionary function exception.

  **C. Proximate Causation**

FEMA also claims Plaintiff's case should be dismissed because "Plaintiff has not shown that FEMA's actions were the proximate cause of his injury." ECF No. 24, Page 1. In Plaintiff's Second Amended Complaint, Plaintiff pled that FEMA's direction to grade the Airport Property caused a "significant increase in water runoff" which "caused substantial flooding and deterioration of the soil composition." ECF No. 19 ¶ 15. Even though this pleading does not "show" or establish proximate cause, it is sufficient to state a claim under the notice pleading required by Federal Rule of Civil Procedure 8(a)(2). *See Hamilton v. Palm,* No. 09-3676, 2010 WL 3619580, at *2-3 (8th Cir. Sept. 20, 2010) (holding that as long as the plaintiff raised a "plausible inference," the correctness of a given inference "is not an issue to be determined by a motion to dismiss").

  **D. Default Judgment Against Clearbrook**

FEMA claims Plaintiff's case should be dismissed because, in a separate action, Plaintiff obtained a default judgment against Clearbrook. ECF No. 24. *See Buck v. Clearbrook,* 4:10-cv-04103, ECF No. 46. FEMA claims that by obtaining this default judgment, Plaintiff has "elected his remedies" and can no longer pursue an action against FEMA. There is one major problem with this argument. Plaintiff has alleged FEMA and Clearbrook are both liable for this injury. As alleged "joint tortfeasors" under Arkansas law, even if Plaintiff were to *recover* a judgment against

Clearbrook, FEMA would still not be absolved from responsibility. *See* Ark. Code Ann. § 16-61-203. As that law states, "the recovery of a judgment by the injured person against one (1) joint tortfeasor does not discharge the other joint tortfeasor." *Id.* In this case, Plaintiff has only obtained a default judgment and has not *recovered* anything from Clearbrook. *See Buck v. Clearbrook,* 4:10-cv-04103. Indeed, on September 27, 2010, Clearbrook filed a motion challenging the default judgment and now there is even a question as to whether the default judgment against Clearbrook will stand. Thus, this Court finds FEMA's claim that Plaintiff has "elected his remedies" is meritless.

      E.    **Inverse Condemnation Claim**

FEMA claims Plaintiff's inverse condemnation claim should be sent to the United States Court of Federal Claims. ECF No. 24, Pages 10-11. FEMA claims that an inverse condemnation claim which exceeds $10,000.00 must be heard by the United States Court of Federal Claims. *Id.* FEMA bases its argument upon 28 U.S.C. § 1491(a)(1) and the Little Tucker Act which state that the United States Court of Federal Claims has exclusive jurisdiction for all claims which include a breach of an "express or implied contract with the United States" and which exceed $10,000.00. *Id.*

These provisions, however, do not apply in cases "sounding in tort." Thus, such tort cases do not need to be brought in the Untied States Court of Federal Claims. Further, the issue of whether the claim of inverse condemnation in this case is a tort claim is in dispute. While FEMA makes assumption that it is not a tort claim, Plaintiff argues that the damages are a *reduction in value*, which are tort damages. In Arkansas, the issue of whether an inverse condemnation claim is a tort is a factual issue which depends upon the level of damage to the property. *See Robinson v. City of Ashdown,* 301 Ark. 226, 232 (Ark. 1990) (holding that inverse condemnation claim is not a tort where the value of the landowner's property is "substantially" diminished). Without discovery on this issue, it would be

12

premature for the Court to assume this claim does not sound in tort.  At a later time, after discovery regarding this issue has been accomplished, FEMA may re-urge this motion with the appropriate authority for demonstrating that this inverse condemnation claim is not a tort.

**4. Conclusion**

Based upon the foregoing, this Court recommends that Defendant's Motion to Dismiss (ECF No. 23) be **DENIED**.  Subject matter jurisdiction and the issue of this Court's authority to hear this action may be raised at any time.  *See* FED. R. CIV. P. 12(h)(3).  Therefore, FEMA may re-urge this motion at a later date after further discovery has been conducted.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.  *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).**

**ENTERED this 19th day of October, 2010.**

/s/  Barry A. Bryant  
HON. BARRY A. BRYANT  
U. S. MAGISTRATE JUDGE

13